**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD McCALL, | ) | CASE NO. 1:18-CV-00957 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.,* | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Richard McCall (hereinafter "Plaintiff"), challenges the final decision of

Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter

"Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title

XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* ("Act"). This court has jurisdiction

pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate

Judge pursuant to consent of the parties. (R. 18). For the reasons set forth below, the

Commissioner's final decision is AFFIRMED.

## I. Procedural History

On January 15, 2015, Plaintiff filed his application for SSI, alleging a disability onset date

of June 4, 2014. (Transcript ("Tr.") 182-190). The application was denied initially and upon

reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 71-98). Plaintiff participated in the hearing on February 2, 2017, was represented by counsel, and testified. (Tr. 28-46). A vocational expert ("VE") also participated and testified. *Id*. On May 3, 2017, the ALJ found Plaintiff not disabled. (Tr. 15-22). On February 28, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). On April 26, 2018, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 14, 16 & 17).

Plaintiff asserts the following assignments of error: (1) the ALJ erred in discrediting the medical opinions of his treating physicians; (2) the ALJ erred in discrediting the medical opinion of a consultative examiner; (3) the ALJ erred in finding that he did not meet Listing 11.14 for peripheral neuropathy; and, (4) the ALJ erred by finding him not credible based non-compliance with medication and him providing care for an elderly aunt. (R. 14, PageID# 846-847).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

On December 6, 2014, Plaintiff presented to the Emergency Room (ER) with shortness of breath, cough, constipation, and a fever. (Tr. 266). He reported losing 70 pounds over the last 2 months. *Id*. He weighed 165 pounds. (Tr. 267). On examination, he had normal musculoskeletal range of motion, and normal strength. *Id*.

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

On December 7, 2014, Stephen Archacki, M.D., Ph.D., noted that a CT scan suggested "malignancy (generalized adenopathy, liver mets, 1 bone met)." (Tr. 270). His impression was marked lymphadenopathy, multiple hypodensities in the spleen raising the possibility of metastatic disease, right lobe liver lesion, and questionable lucent lesion in the right iliac bone. *Id.*

On January 5, 2015, oncologist Brian Hill, M.D., Ph.D., noted that Plaintiff was a previously healthy male who was "newly diagnosed EBV-positive Classical Hodgkin lymphoma." (Tr. 306). Dr. Hill informed Plaintiff that "Hodgkin lymphoma generally has an aggressive clinical course but is highly treatable and curable in the majority of patients using a combination of systemic chemotherapy." *Id.* He noted that full staging studies are required prior to the initiation of therapy, as well as an echocardiogram and baseline pulmonary function tests. *Id.*

On January 22, 2015, Plaintiff began ABVD chemotherapy. (Tr. 343).

On February 19, 2015, McCall reported no significant nausea, some pain and discomfort in his foot at the site of his bone marrow biopsy, substantially improved appetite, and itching at the site of the port. (Tr. 339). At that time, Dr. Hill opined that Plaintiff was "ambulatory and capable of all selfcare but unable to carry out any work activities." (Tr. 340).

On March 19, 2015, Plaintiff was seen by Mitchell Smith, M.D., who noted Plaintiff tolerated the first two cycles of chemotherapy "OK." (Tr. 336). Plaintiff had no fever, no respiratory symptoms, and his night sweats had resolved. *Id.* He had loose stools, but good appetite, weight gain, and no nausea. *Id.* He reported bilateral foot burning pain, insomnia, itching all over his body, and pain at the bone marrow biopsy site. *Id.* At that time, Dr. Smith opined that Plaintiff was "ambulatory and capable of all selfcare but unable to carry out any

work activities." *Id*. He had no lower extremity weakness. *Id*. With respect to Plaintiff's foot pain, Dr. Smith expressed "concerns about vinblastine-mediated neuropathy," and reduced vinblastine by 50% for that day's treatment. (Tr. 337).

On April 2, 2015, Plaintiff told a social worker that his pain was not managed by his prescribed pain medications. (Tr. 523).

On April 16, 2015, Dr. Hill noted that Plaintiff's lymphoma was in "complete response" after three cycles of chemotherapy and the fourth would proceed without vinblastine due to neuropathy. (Tr. 508). Plaintiff reported blurry vision, which was unlikely to be related to chemotherapy, and he was referred to an optometrist. *Id*.

On April 29, 2015, McCall was seen by Susan McInnes, M.D. (Tr. 498-500). Plaintiff reported 10 of 10 pain. (Tr. 499). Plaintiff reported sleeping only two hours per night over the last 20 years. (Tr. 498). His Gabapentin dosage frequency was increased. (Tr. 500).

On May 13, 2015, it was noted that Plaintiff tolerated his fourth cycle of chemotherapy without incident. (Tr. 489). Plaintiff had no lower extremity weakness. *Id*. His lymphoma was in "complete response after 4 cycles" of chemotherapy but with significant neuropathy. (Tr. 488). It was noted that his pain was not controlled with Gabapentin and Norco. *Id*.

On May 20, 2015, Plaintiff underwent an ophthalmology exam performed by Annapurna Singh, M.D. (Tr. 482-485). McCall was diagnosed with blurred vision and Rosette cataract of the left eye and given a prescription for glasses. (Tr. 483).

On May 27, 2015, Plaintiff was seen by podiatrist Stella Chiunda, DPM, for diabetic foot evaluation. (Tr. 470). Plaintiff reported numbness, tingling, and burning in his feet since he began chemotherapy, and reported similar symptoms in his hands starting several weeks ago. *Id*. Physical exam of the feet showed "+5/5 muscle strength Dorsiflexion, Plantarflexion, Inversion,

Eversion" bilaterally, range of motion of the first metatarsophalangeal joint was "diminished without pain or crepitus" bilaterally, and ankle joint range of motion was decreased bilaterally. (Tr. 474). Plaintiff was diagnosed with paresthesias secondary to chemotherapy, and noted that chemotherapy is a common cause of such symptoms. *Id*.

Also on May 27, 2015, Dr. McInnes observed Plaintiff was on his sixth of six planned cycles of chemotherapy. (Tr. 478). He was seen for a follow-up concerning neuropathic pain. *Id*. His pain had improved somewhat, but was still significant. *Id*. The neuropathy in Plaintiff's toes was described as 10/10, constant, and debilitating. (Tr. 479).

On May 27, 2015, an x-ray of Plaintiff's feet revealed "[m]ild bilateral pes planus deformity" and "[m]inimal degenerative change at the 1st MTP and IP joints." (Tr. 506).

On June 25, 2015, Plaintiff was seen for complaints of bilateral finger and toe paresthesia with numbness. (Tr. 628). At that time, Plaintiff reported spending his days helping his sickly aunt. (Tr. 629, 696). Plaintiff related that he "smokes cocaine and marijuana daily; he's used both for almost daily for ~30 years," but denied any secondary consequences to his drug abuse. (Tr. 696). It was noted that due to Plaintiff's "chronic, daily use of cocaine and marijuana and lack of desire to stop, opioids will not be prescribed." (Tr. 697). Plaintiff reported losing his pain medications 3-4 weeks earlier, and indicated his pain had escalated since then. (Tr. 696).

By August 3, 2015, Plaintiff had completed six cycles of chemotherapy with good response (Tr. 692). He was noted as doing well, but with continued complaints of neuropathy in his fingers and toes. (Tr. 693). Four days later, he had his port removed. (Tr. 762).

On January 25, 2016, Dr. Hill noted Plaintiff's lymphoma was in complete remission with no sign of relapse. (Tr. 741). Plaintiff presented with right shoulder pain for which Dr. Hill offered physical therapy, but Plaintiff declined. *Id*. Dr. Hill noted Plaintiff's neuropathy may take

months to years to improve. *Id*. Dr. Hill opined that Plaintiff was "restricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature." (Tr. 742). On physical examination, Plaintiff was in no acute distress, he had impaired induction in the right shoulder, no edema, and no effusion or joint tenderness. *Id*.

On June 6, 2016, Dr. Hill noted that Plaintiff continued to suffer from peripheral neuropathy, wore ankle supports, and again stated that Plaintiff was ambulatory and able to carry out work of a light or sedentary nature. (Tr. 713).

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On April 15, 2015, Eli Perencevich, D.O., a state agency doctor, reviewed the evidence of record. (Tr. 47-55). Dr. Perencevich opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, and stand for 6 hours and sit for more than 6 hours in an 8-hour workday. (Tr. 52). In addition, he found Plaintiff could frequently climb ramps/stairs, kneel, and stoop; never climb ladders ropes or scaffolds; had an unlimited ability to balance; and could occasionally crouch and crawl. (Tr. 52). Plaintiff had no visual or manipulative restrictions. (Tr. 53). Finally, Plaintiff was to avoid concentrated exposure to irritants as well as hazards. *Id*. Dr. Perencevich explained that while Plaintiff had been diagnosed with Stage IVB Hodgkin's Lymphoma, he was responding well to treatment noting that Plaintiff had gained weight, had good blood counts, and no lower extremity weakness. (Tr. 52-53).

On June 10, 2015, Dr. Hill completed a form concerning Plaintiff's functional limitations. (Tr. 776-777). Therein, Dr. Hill indicated Plaintiff cannot stand/walk for any amount of time, can only lift/carry a maximum of three pounds, could sit for eight hours, and could never perform postural activities. (Tr. 776). He indicated Plaintiff would miss more than four days of work per month, would be off-task over 20 percent of the workday, would need to lie down for 30 minutes

throughout the course of the workday, and could only use his hands less than 10 percent of the workday, and would require one additional unscheduled work break. (Tr. 777). He indicated his assessment was supported by neuropathy. (Tr. 776-777).

On July 15, 2015, Dorothy Bradford, M.D., completed a consultative evaluation of Plaintiff (Tr. 684-91). Plaintiff had normal manual muscle strength, reduced range of motion in the right shoulder due to pain in the mediport, and abnormal manipulative abilities. (Tr. 684-85, 690). Plaintiff had a normal gait but used a cane on the right side. (Tr. 690). Dr. Bradford opined that Plaintiff could not perform active or sedentary activity due to "severe chemotherapy induced peripheral neuropathy in the hands and feet." (Tr. 691). She also opined that as a result, Plaintiff was limited in his ability to perform fine and gross motor manipulation and had foot pain with and without ambulation. *Id*. Dr. Bradford noted that this condition usually resolved within six months to a year after chemotherapy treatment. *Id*.

On July 29, 2015, a second state agency doctor, Ann Prosperi, D.O., reviewed the evidence of record and assessed an RFC that mirrored that of Dr. Perencevich. (Tr. 63-66). However, she assessed the additional restriction of limited handling and fingering due to chemotherapy induced neuropathy in his hands. (Tr. 65).

On August 3, 2016, Plaintiff's podiatrist, Sai Man Lee, D.P.M., wrote a letter stating that she had seen Plaintiff for the past seven months for neuropathic pain and instability following chemotherapy. (Tr. 774). Dr. Lee indicated that Plaintiff had reported tingling, numbness, burning, and electric pain that radiates down his foot and ankles, particularly at night, and frequent falls. *Id*. Plaintiff stated that his legs were swollen and ached and that his walking had been altered. *Id*. Dr. Lee indicated that "[b]ecause these symptoms are the result of his chemotherapy I have told him that his nerve damage and ankle instability will be permanent

issue that he will have to deal with for the rest of his life. I have told him that Lyrica may help his nerve pain but will not address the underlying root cause that the nerve damage from his chemotherapy. " *Id.*

On January 19, 2017, Dr. Hill wrote a letter stating that Plaintiff has "residual peripheral neuropathy involving his feet that limits his ability to stand for long periods of time and walk for long distances." (Tr. 775).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments)

that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since December 30, 2014, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: Hodgkin's lymphoma and peripheral neuropathy (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the following: lifting/carrying ten pounds frequently and 20 pounds occasionally, constant pushing/pulling, standing/walking six hours and sitting six hours of an eight-hour workday, frequent climbing of ramps/stairs, no climbing of ladders/ropes/scaffolds, constant balancing, frequent stooping and kneeling, occasional crouching and crawling, constant reaching and feeling, frequent handling and fingering, must avoid high concentrations of smoke, fumes, and dust, and must avoid entirely being around dangerous machinery and heights.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on *** 1963 and was 51 years old, which is

defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 C.F.R. § 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 30, 2014, the date the application was filed (20 CFR 416.920(g)).

(Tr. 17-22).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).

Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

## B. Plaintiff's Assignments of Error

### 1. Weight Accorded Treating Physician Opinions

In the first assignment of error, Plaintiff asserts the ALJ erred by rejecting the opinions of his treating oncologist, Dr. Hill, and his treating podiatrist, Dr. Lee. (R. 14, PageID# 849-852). With respect to Dr. Hill, Plaintiff cites two opinions—one contained in a questionnaire completed on June 10, 2015 (Tr. 776-77) and another in a letter dated January 17, 2017 (Tr. 775)—and asserts the ALJ did not provide proper reasons for rejecting these opinions. (R. 14, PageID# 850). The Commissioner asserts that the latter opinion from 2017 was indeed vague while arguing the earlier opinion from 2015 was only a snapshot of Plaintiff's conditions when undergoing chemotherapy that contrasts with his improvement by 2016. (R. 16, PageID# 869-871). Regarding Dr. Lee, Plaintiff takes issue with the ALJ's finding that Dr. Lee's opinion was based on Plaintiff's self-reports or otherwise contradicted by other treating sources. (R. 14, PageID# 850-852). The Commissioner responds that the ALJ's finding was a reasonable interpretation of the record. (R. 16, PageID# 871).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion

'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc.*

*Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

Here, the ALJ addressed Dr. Hill's and Dr. Lee's opinions as follows:

> In February 2016, the claimant's oncologist [Dr. Hill] noted that the claimant's neuropathy might take months or years to improve (Exhibit 8F:30). However, he also noted that the claimant is able to carry out light or sedentary activity. The claimant continues to be in complete remission; however, he also continues to experience neuropathy in the feet and hands (Exhibit 8F:1). The claimant's podiatrist, Sai Man Lee, D.P.M., noted that the claimant's nerve damage and ankle instability would be permanent (Exhibit 9F). Dr. Lee indicated that, as a result, the claimant is unstable at times. I give no weight to this assessment as it is based on the claimant's self-report and is not consistent with other treating sources who indicate that these symptoms will likely improve over time.
>
>                                  ***
>
> In a letter dated January 9, 2017, the claimant's treating oncologist, Brian Hill, M.D., Ph.D., concluded that the claimant is unable to stand or walk for long periods of time due to residual peripheral neuropathy from chemotherapy (Exhibit 10F). Dr. Hill also completed a questionnaire on June 10, 2015 (Exhibit 11F). [At] that time, Dr. Hill concluded that the claimant can lift/carry up to three pounds, cannot stand/walk, can never climb, balance, stoop, crouch, kneel, or crawl, and is restricted from heights, moving machinery, temperature extremes, chemicals, fumes, and vibration. He also concluded that the claimant would be absent from work more than four days a month and would be off task 20% of the workday. I give no weight to the conclusions of Dr. Hill. His conclusions in his January 2017 letter are vague. In addition, it appears that his conclusions in June 2015 were primarily based on the claimant's self-reports and subjective symptoms and not Dr. Hills [sic] actual objective findings throughout his treatment records, as outlined above. In addition, the opinion given in June 2015 is within 12 months

of the claimant's cancer treatment and follow-up treatment records indicate that
medications have helped somewhat with the claimant's neuropathy.

(Tr. 19, 20).

With respect to Dr. Hill, the ALJ reasonably rejected his opinions as contained in a
questionnaire completed on June 10, 2015 (Tr. 776-777) given that Dr. Hill subsequently opined
that Plaintiff was "restricted in physically strenuous activity but ambulatory and able to carry out
work of a light or sedentary nature" on January 25, 2016 and June 6, 2016. (Tr. 713, 742).
Plaintiff asserts that these unambiguous statements from Dr. Hill are "not the same as clearly
opining that a claimant is capable of full-time sedentary and light work as defined by the Social
Security Administration." (R. 14, PageID# 849). This is mere conjecture, as neither Plaintiff nor
the court can discern Dr. Hill's understanding of sedentary or light work. Furthermore, Dr. Hill's
statements can reasonably be construed as indicating a profound and dynamic improvement from
the time he rendered his June 10, 2015 opinion. As such, the ALJ gave sufficiently good reasons
for rejecting Dr. Hill's June of 2015 opinion based on the less restrictive opinion rendered by
him approximately seven months later.

Plaintiff also takes issue with the ALJ's characterization of a letter written by Dr. Hill on
January 19, 2017, as vague. The ALJ's description of the letter is entirely accurate. Dr. Hill's
letter states: "As a result of his treatment, [Plaintiff] has residual peripheral neuropathy
involving his feet that limits his ability to stand for long periods of time and walk for long
distances." (Tr. 775). Dr. Hill does not define what he meant by "long periods of time" or "long
distances." *Id*. Furthermore, as mentioned directly above, the previous year Dr. Hill had at least
twice stated that Plaintiff could perform light work. The ALJ found Plaintiff could stand/walk for

six hours in an eight-hour workday.[2] (Tr. 18). Absent any definition, it is not at all clear that the assessed prohibition against standing for long periods of time or an inability to walk long distances necessarily conflicts with the ability to perform the standing/walking requirements of light work.

Turning to the opinion Plaintiff's podiatrist, Dr. Lee, the ALJ accurately observed that it was based primarily on Plaintiff's self-reports. (Tr. 19). The August 3, 2016 opinion, which Plaintiff believes should have been accorded greater weight, is replete with statements from Plaintiff concerning his symptoms. First, Dr. Lee does *not* indicate that she personally witnessed any of the "frequent incidents" reported by Plaintiff. (Tr. 774). Second, the very language used by Dr. Lee is indicative of her reliance on Plaintiff's self-reported symptomology. She states that "*[Plaintiff] also relates* symptoms of tingling, numbness, burning, and electric pain that radiates down his foot and ankles throughout the day and particularly more painful at night. *He says* that his legs are also swollen and ache[] all the time and because of this pain *he states* that his walking has been altered." *Id*. (emphasis added). "When a treating physician's opinion is based on a claimant's self reports which are themselves not credible, it is not error to assign little weight to the opinion." *Webb v. Comm'r of Soc. Sec.*, No. 2:13-CV-19, 2014 WL 129237, at *6 (E.D. Tenn. Jan. 14, 2014) (citing *Vorholt v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 883, 889 (6th Cir. 2011) (finding no issue with the ALJ's rejection of a physician's opinion that was based on the claimant's false reports)); *accord Lockhart v. Colvin*, No. 5:14-CV-00852, 2015 WL 1505767, at *6 (N.D. Ohio Apr. 1, 2015) (White, M.J.) (same); *Griffith v. Comm'r of Soc. Sec.*,

_____

[2] "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." Social Security Ruling ("SSR") 83-10, 1983 SSR LEXIS 30, *14 (1983).

582 Fed. App'x 555, 564 (6th Cir. 2014) ("the ALJ is not required to simply accept the testimony of a medical examiner based solely on the claimant's self-reports of symptoms, but instead is tasked with interpreting medical opinions in light of the totality of the evidence."); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (affirming ALJ's rejection of treating physician opinions where "[t]hese doctors formed their opinions solely from Smith's reporting of her symptoms and her conditions and the ALJ found that Smith was not credible"); *Stevenson v. Astrue*, 2010 WL 3034018 at * 8 (M.D. Tenn. Aug. 3, 2010) (finding that a medical opinion "based on [an] incredible self-report could reasonably be given insignificant weight by an ALJ when the credibility determination is based on substantial evidence").

Furthermore, Dr. Lee's conclusion, that Plaintiff's symptoms are likely to be permanent because they are the result of chemotherapy, was also rejected by the ALJ on the grounds that it conflicted with other evidence of record. (Tr. 19). As noted above, board certified internist Dr. Bradford offered a starkly contradictory opinion, stating that chemotherapy induced peripheral neuropathy usually resolves within six to twelve months after the conclusion of chemotherapy. (Tr. 691). Dr. Hill also opined that neuropathy can take months or even years to improve. (Tr. 741). Thus, the ALJ reasonably discredited Dr. Lee's opinion that chemotherapy induced neuropathy is permanent, as well as the self-reported symptoms in Dr. Lee's "To whom it may concern" letter, and gave good reasons for doing so. (Tr. 774).

### 2. Weight Accorded to Consultative Examiner's Opinion

In the second assignment of error, Plaintiff contends the ALJ erred by assigning only "some weight" to the opinion of Dr. Bradford, a consultative examiner. (R. 14, PageID# 852). Plaintiff's brief fails to acknowledge the "good reasons" requirement is inapplicable to examining physicians.

16

The opinion of a non-treating but examining source is not subject to the rigors of the treating physician rule. The "regulation requiring an ALJ to provide 'good reasons' for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one non-treating source's opinion over another." *Williams v. Colvin*, 2015 WL 5165458 at *5 (N.D. Ohio, Sept. 2, 2015) (*citing Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496 (6th Cir. 2006); *accord Chandler v. Comm'r of Soc. Sec.*, 2014 WL 2988433 at *8 (S.D. Ohio, July 1, 2014) ("the ALJ is not required to give 'good reasons' for rejecting a nontreating source's opinions in the same way as must be done for a treating source"). Instead, an ALJ, when arriving at the RFC assessment, "must always consider and address medical source opinions [and] [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996); *see also Puckett v. Colvin*, 2014 WL 1584166 at *9 (N.D. Ohio April 21, 2014) (Vecchiarelli, M.J.) (explaining that, although the ALJ was *not* required to evaluate opinions of consultative examiners with the same standard of deference as would apply to an opinion of a treating source, he was required to "acknowledge that [the examiners'] opinions contradicted his RFC finding and *explain* why he did not include their limitations in his determination of Plaintiff's RFC") (emphasis added).

Here, the ALJ clearly considered Dr. Bradford's opinion and offered the following assessment of her July 15, 2015 opinion:

> I have considered the medical opinions of record in rendering this decision.
> Dorothy Bradford, M.D., examined the claimant at the request of the Division of
> Disability Determination (DDD) on July 15, 2015 (Exhibit 6F). Dr. Bradford
> concluded that the claimant is not able to perform active or sedentary exertion
> work due to severe chemotherapy induced peripheral neuropathy. She also
> concluded that, as a result, the claimant is limited in his ability to perform fine
> and gross motor manipulation of the hands and has foot pain with and without

ambulation. However, she also noted that this problem usually resolves within 6 months to a year after chemotherapy treatment is finished. I give some weight to the conclusions of Dr. Bradford. They are generally supported by objective signs and findings upon examining the claimant. For example, Dr. Bradford noted a normal gait, but the claimant used a cane on the right. There was some decreased range of motion of the right shoulder; however, there was normal range of motion and strength in the left upper extremity and bilateral lower extremities. Sensation was also reduced in the ankles. However, as indicated by Dr. Bradford, and other treating sources, the claimant's neuropathy symptoms will and have improved with treatment. Overall, I find that the claimant continues to be capable of a reduced range of light exertion work.

(Tr. 19).

Plaintiff fails to develop any meaningful argument suggesting that the ALJ's decision failed to satisfy the *explanation* requirement. Instead, Plaintiff merely takes issue with the ALJ not discussing enough of the relevant factors set forth in 20 C.F.R. § 404.1527, and asserts that "the only justification the ALJ provides for rejecting Dr. Bradford's opinion is his conclusion that the Plaintiff's neuropathy symptoms 'will and have improved with treatment,'" a conclusion he disagrees with. (R. 17, PageID# 885). Notably, Dr. Bradford's opinion was authored on July 15, 2015, less than two months after Plaintiff completed chemotherapy. Dr. Bradford assessed limitations at that time based on neuropathy, which she indicated usually resolves within six to twelve months. While Plaintiff's neuropathy does not appear to have completely resolved during the time span under consideration, approximately six months after Dr. Bradford's opinion, Plaintiff's treating oncologist, Dr. Hill, assessed Plaintiff as being able to perform light and sedentary work, a drastic improvement over his earlier June of 2015 opinion discussed above. Thus, the court finds that the ALJ sufficiently explained the reasons he assigned Dr. Bradford's opinion only "some weight," and that reason—improvement in the severity of Plaintiff's neuropathy symptoms—is supported by the record. While the ALJ's explanation with respect to Dr. Bradford was rather succinct, the explanation requirement is not as rigorous as the good

reasons requirement of the treating physician rule. *See, e.g., Moscorelli v. Colvin*, No. 1:15cv1509, 2016 WL 4486851 at **3-4 (N.D. Ohio Aug. 26, 2016) (Lioi, J.) (observing that a thin explanation that would not constitute a good reason for discounting a treating source's opinion may, nevertheless, satisfy the explanation requirement for a non-treating source). Thus, the court finds no error in the weight ascribed to Dr. Bradford's opinion.

### 3. Listing 11.14

Plaintiff also asserts that the ALJ's decision lacks valid reasons for finding that he did not meet or equal Listing 11.14. (R. 14, PageID# 853-854). At Step Two, the ALJ found Plaintiff suffered from the severe impairments of Hodgkin's lymphoma and peripheral neuropathy. (Tr. 17). At Step Three, Plaintiff bears the burden of proving that his impairment meets or medically equals a particular listing. *See Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987). The Listings, located at Appendix 1 to Subpart P of the regulations, describe impairments considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). In other words, a claimant who meets or medically equals the requirements of a listed impairment will be deemed conclusively disabled. *See Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 414 (6th Cir. 2011). "A claimant must satisfy all of the criteria to meet the listing," *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009), and all of these criteria must be met concurrently for a period of twelve continuous months. *See* 20 C.F.R. §§ 404.1525(c)(3)-(4), 416.925(c)(3)-(4); *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Blanton v. Soc. Sec. Admin.*, 118 Fed. App'x

3, 6 (6th Cir. 2004) ("When all the requirements for a listed impairment are not present, the

Commissioner properly determines that the claimant does not meet the listing.")

> To meet the criteria of Listing 11.14, peripheral neuropathy, Plaintiff must establish:
>
> > A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
> >
> > B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
> >
> > > 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> > >
> > > 2. Interacting with others (see 11.00G3b(ii)); or
> > >
> > > 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> > >
> > > 4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.14. Further, "disorganization of motor function,"

referenced in 11.14(A), § 11.00(D)(1) provides:

> D. What do we mean by disorganization of motor function?
>
> > 1. Disorganization of motor function means interference, due to your neurological disorder, with movement of two extremities; *i.e.*, the lower extremities, or upper extremities (including fingers, wrists, hands, arms, and shoulders). By two extremities we mean both lower extremities, or both upper extremities, or one upper extremity and one lower extremity. All listings in this body system … include criteria for disorganization of motor function that results in an extreme limitation in your ability to:
> >
> > > a. Stand up from a seated position; or
> > >
> > > b. Balance while standing or walking; or
> > >
> > > c. Use the upper extremities (including fingers, wrists, hands, arms, and shoulders).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.00(D)(1).

Plaintiff's argument is predicated entirely upon previously rejected arguments—that the ALJ was required to accept the standing/walking and upper extremity restrictions contained in the opinions of Drs. Hill, Lee and Bradford. (R. 14, PageID# 854). As explained above, the ALJ did not err in rejecting those opinions (or portions thereof), in large part because Plaintiff's condition improved. Implicit in that finding is that Plaintiff's functional limitations did not persist at a disabling level of severity for the requisite continuous period of twelve months or more. As such, Plaintiff's argument that he met or medically equaled Listing 11.14 is not persuasive.

### 4. Credibility of Plaintiff

Plaintiff's final assignment of error argues that the ALJ improperly discredited Plaintiff based on the allegedly erroneous conclusion that Plaintiff cared for his elderly, sick aunt and was non-compliant with his medications. (R. 14, PageID# 854-858).

According to Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017),[3] evaluating an individual's alleged symptoms entails a two-step process that involves first

---

[3] As the ALJ's decision is dated May 3, 2017, SSR 16-3p applies to this action, as it superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996) with respect to "determinations and decisions on or after March 28, 2016." "The Sixth Circuit characterized SSR 16-3p … as merely eliminating 'the use of the word credibility … to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the two, and the changes largely reflect a preference for a different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). While the court applies the more recent ruling, it declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical. Furthermore, there is no indication that the voluminous case law discussing and applying the credibility or symptom analysis governed by SSR 96-7p has been invalidated by SSR 16-3p.

deciding whether a claimant has an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. at *2-3. The ALJ's decision found the first step was satisfied, stating that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 18). Once step one is satisfied, an ALJ, when considering the intensity, persistence, and limiting effects of an individual's symptoms, should consider the following seven factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p at *4-8 (same factors as in SSR 96-7p).

However, an ALJ is not required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). "[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) ("[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded.") (citations omitted).

Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective

complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983)* ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation"). "In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p at *10.[4] Rather, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*. at *10. A reviewing court should not disturb an ALJ's credibility "absent [a] compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and "in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

The ALJ acknowledged Plaintiff's allegations that he continues to experience side effects from his chemotherapy, namely pain and swelling in his extremities, and difficulty gripping objects. (Tr. 18). Plaintiff asserts that the ALJ should have credited the alleged severity of his symptoms, and that the ALJ's failure to do so based on his care for his aunt and his non-compliance with prescribed medication are grounds for remand. (R. 14, PageID# 855-858).

---

[4] SSR 16-3p merely replaced the term "credible" in this sentence from SSR 96-7p with the terms "supported or consistent." 2016 WL 1119029 at *9.

Plaintiff asserts that the record does not support a finding that he was non-compliant with his neuropathy medications because his reason for not taking them for three to four weeks was that he lost them. *Id.* Plaintiff further asserts that his hearing testimony demonstrates that he did not actively provide care for his aunt, but rather performed only minor tasks for her. *Id.*

The court finds no compelling reason to overturn the ALJ's credibility determination. The medical record does indicate that on or about June 25, 2015—the same time frame when the most limiting restrictions were assessed—Plaintiff spent his days caring for his ill aunt. (Tr. 629, 696). During the February 2017 hearing, Plaintiff testified that he stopped taking care of his aunt about a year earlier, which would have been approximately February of 2016. (Tr. 37). Plaintiff argues that it was a mistake for the ALJ to discredit his testimony since he explained at the hearing that he performed only limited activities for his aunt such as cooking, obtaining water or medicine, and keeping her company. (R. 14, PageID# 856, *citing* Tr. 38). The ALJ, however, was under no obligation to accept Plaintiff's hearing testimony in this regard.

Plaintiff also takes issue with the ALJ's observation that he was not fully compliant with his medication, arguing that he lost his medication which is not the same as non-compliance. (R. 14, PageID# 856). The Commissioner counters that Plaintiff offers no credible explanation for failing to have his lost medications replaced. (R. 16, PageID# 874-875). Plaintiff cites no authority suggesting the ALJ's inference—that an individual who alleges very high levels of pain is non-compliant when he or she fails to take prescribed medication or replace the medication in a timely manner when lost—is impermissible. Given the high level of deference owed to the ALJ's credibility determination, Plaintiff has failed to identify any basis for a remand.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: September 10, 2019